**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**CAESAR DICRECCHIO,**<br>a/k/a "Sonny" | **CRIMINAL NO. 21-83** |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                                       **May 29, 2025**

Before the Court is a counseled motion for compassionate release filed pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) by Defendant Caesar DiCrecchio, a 64-year-old inmate incarcerated at Federal Correctional Institution ("FCI") Lewisburg. Mr. DiCrecchio argues that Amendment 821 to the sentencing guidelines, his transfer from FCI Fort Dix to FCI Schuylkill, and his medical conditions provide extraordinary and compelling circumstances for a sentence reduction.[1] For the reasons stated below, the Court will deny his motion.

**I.   BACKGROUND**

On April 6, 2021, Mr. DiCrecchio pled guilty to two counts of wire fraud, in violation of 18 U.S.C. § 1343, conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), aggravated identity theft, in violation of 18 U.S.C. § 1028A, and four counts of tax evasion, in violation of 26 U.S.C. § 7201.[2] These charges stemmed from Mr. DiCrecchio's scheme to defraud the Philadelphia Wholesale Produce Market, from which he successfully embezzled over $7 million.[3]

---

[1] Mot. Sentence Reduction at 2; Mem. Supp. Mot. Sentence Reduction at 11 [Doc. No. 43].

[2] Am. Crim. J. [Doc. No. 30].

[3] Gov't Resp. Opp'n Compassionate Release at 1-2 [Doc. No. 47].

On November 22, 2021, this Court imposed a sentence of 97 months on counts 1 through 4, a concurrent sentence of 60 months on counts 6 through 9, and a consecutive sentence of 24 months on count 5 (the aggravated identity theft charge), for a total sentence of 121 months.[4] This sentence was at the upper end of the Sentencing Guidelines range of 102 to 121 months.[5] Mr. DiCrecchio has now served approximately 40 months of the 121-month term of imprisonment. His minimum release date, with good time credit, is August 8, 2029.[6]

## II. LEGAL STANDARD

Once a sentence has been imposed, a federal district court has limited authority to modify the sentence.[7] One statute that permits a modification is 18 U.S.C. § 3582 (c)(1)(A)(i), which, as amended by the First Step Act of 2018, "empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons.'"[8] Once a defendant has satisfied the exhaustion requirement,[9] the court may reduce a term of imprisonment based on a finding that: 1) "extraordinary and compelling reasons warrant such a reduction"[10]; 2) pursuant to the Sentencing Commission's policy statement, the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"[11]; and 3) the relevant

---

[4] Mot. Sentence Reduction at 4 [Doc. No. 43]; Gov't Resp. Opp'n Mot. Sentence Reduction at 3-4 [Doc. No. 47].

[5] Gov't Resp. Opp'n Mot. Sentence Reduction at 4 [Doc. No. 47].

[6] *Id.*

[7] *Dillon v. United States*, 560 U.S. 817, 825 (2010).

[8] *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2000) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

[9] "A prisoner may file a motion for compassionate release with the sentencing court 'after [he or she] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)) (brackets in *Harris*).

[10] 18 U.S.C. § 3582 (c)(1)(A).

[11] U.S.S.G. § 1B1.13(2).

§ 3553(a) sentencing factors favor a reduction in sentence.[12] The defendant bears the burden of showing that relief is warranted.[13]

### III. DISCUSSION

#### A. Mr. DiCrecchio has not met the exhaustion requirement.

Mr. DiCrecchio has not demonstrated that he has met the administrative exhaustion requirement of § 3582.[14] He does not state in his motion that he submitted a request to the warden for compassionate release, nor does he state that the warden denied his request. This alone is a sufficient basis for denying his motion. However, the exhaustion requirement is not jurisdictional.[15] Here, the government has noted that Mr. DiCrecchio has not demonstrated that he has satisfied the administrative exhaustion requirements but agrees to reach the merits of the motion because it views the motion as "plainly without merit."[16] Therefore, the Court will address Mr. DiCrecchio's substantive arguments.

#### B. Mr. DiCrecchio has not presented extraordinary and compelling reasons meriting release.

Mr. DiCrecchio's request for compassionate release is premised on three arguments: first, that Amendment 821, if applicable to him, would have retroactively reduced his Guidelines range; second, his transfer to FCI Schuylkill; and third, his medical conditions, namely his eye health and vision. He argues that considered together, he presents extraordinary and compelling

---

[12] *See* 18 U.S.C. § 3582(c)(1)(A).

[13] *United States v. Fields*, 569 F. Supp. 3d 231, 235 & n.28 (E.D. Pa. 2021) (collecting cases).

[14] 18 U.S.C. § 3582(c)(1)(A).

[15] *United States v. Banks*, No. 21-2674, 2022 WL 832049, at *2 (3d. Cir. March 21, 2022). *See also United States v. Hemmelgarn*, 15 F.4th 1027, 1030-31 (10th Cir. 2021) (holding that the administrative exhaustion requirement is not jurisdictional and may be waived by the government); *United States v. Texiera-Nieves*, 23 F.4th 48, 53 (1st Cir. 2022); *United States v. Saladino*, 7 F.4th 120, 124 (2d Cir. 2021); *United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021).

[16] Gov't Resp. Opp'n Mot. Sentence Reduction at 5 [Doc. No. 47].

reasons warranting a 19-month reduction in sentence. The Court disagrees.

*1.    Amendment 821*

First, Mr. DiCrecchio argues that Amendment 821 to the Sentencing Guidelines, which created a two-level decrease for defendants with no criminal history points and whose instant offense did not involve specific aggravating factors, should apply to him. However, Mr. DiCrecchio concedes that he does not qualify, because even though he had no criminal history points, his instant offense *did* involve specific aggravating factors: he received a sentencing enhancement for an Aggravating Role under § 3B1.1 of the Sentencing Guidelines due to his leadership in a sustained criminal activity.[17] Regardless of this concession, Mr. DiCrecchio argues that he should still benefit from the two-level decrease and Guidelines range under the catchall provision that allows for sentence reductions "to better account for and reflect the plain language of section 3582(c)(1)(A), its legislative history, and decisions by courts made in the absence of binding policy statement."[18] This catch-all provision cannot provide relief to a defendant who would qualify for an enumerated sentence reduction but for his specific exclusion based on an aggravating factor set forth in the Amendment. Such a result would defy logic and render the specific exclusions irrelevant.

*2.    Transfer*

Next, Mr. DiCrecchio argues that his transfer from FCI Fort Dix to FCI Schuylkill warrants a sentence reduction. He believes he was transferred because his daughter's ex-husband began working at FCI Fort Dix and points specifically to the facts that he lost all the education credits he earned at FCI Fort Dix when he transferred and that he is now hours away from his

---

[17] Mem. Supp. Mot. Sentence Reduction at 8 [Doc. No. 43].

[18] U.S.S.G. § 1B1.13 Am. 814 commentary.

family in New Jersey as circumstances warranting a sentence reduction.[19]

Transfer of a sentenced defendant is common and does not in itself constitute an extraordinary and compelling reason that might warrant a sentence reduction. Inmates are transferred within the Bureau of Prison ("BOP") system daily, based on the BOP's statutory authority to designate the place of confinement.[20] Regarding Mr. DiCrecchio's alleged loss of his education credits from Fort Dix, he provides no support for this argument, and the government provided his education record reflecting 510 credit hours earned at FCI Fort Dix.[21] Moreover, FCI Schuylkill is well within the 500 driving miles goal set forth in the statute governing the BOP's authority to designate the place of confinement and therefore is not excessively far from his family.[22] Finally, given Mr. DeCrecchio's belief that he was moved to resolve a conflict of interest with his daughter's ex-husband who works at FCI Fort Dix,[23] it cannot be said that the transfer was punitive. Accordingly, the Court finds that Mr. DiCrecchio has not presented an extraordinary and compelling reason warranting release on this basis.[24]

### 3. *Medical Conditions*

Finally, Mr. DiCrecchio argues that his medical conditions present extraordinary and compelling reasons for a sentence reduction. The guideline policy statement on compassionate release for medical conditions provides that "extraordinary and compelling reasons" for release exist where:

---

[19] Mem. Supp. Mot. Sentence Reduction at 10 [Doc. No. 43].

[20] 18 U.S.C. § 3621(b).

[21] Gov't Resp. Opp'n Mot. Sentence Reduction Ex. B at EC page 308 [Doc. No. 48].

[22] 18 U.S.C. § 3621(b). According to the BOP's inmate locator webpage, Mr. DiCrecchio is now incarcerated at FCI Lewisburg, which is also within the recommended driving distance.

[23] Mem. Supp. Mot. Sentence Reduction at 10 [Doc. No. 43].

[24] 18 U.S.C. § 3681(b).

(1) Medical Circumstances of the Defendant.—

    a. The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    b. The defendant is—

        i. Suffering from a serious physical or medical condition,

        ii. Suffering from a serious functional or cognitive impairment, or

        iii. Experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility from which he or she is not expected to recover.

    c. The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

    d. The defendant presents the following circumstances—

        i. The defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

        ii. Due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

        iii. Such risk cannot be adequately mitigated in a timely manner.[25]

Mr. DiCrecchio has recently undergone three procedures, including surgery, for a detached retina. He explains that as a result he is partially blind in one eye.[26] Mr. DiCrecchio argues that since he has been transferred to FCI Schuylkill, he has been "separated . . . from his group of

---

[25] U.S.S.G. Section 1B1.13(b)(1).

[26] Mem. Supp. Mot. Sentence Reduction at 11 [Doc. No. 43]

superior specialists [and relegated] to work with doctors unfamiliar to him and his ailments."[27]

Although unfortunate, Mr. DiCrecchio's eye conditions do not meet the requirements for an extraordinary and compelling medical circumstance. The medical records show that his conditions are managed properly in BOP custody; he does not present a terminal illness; and he offers no evidence that he is unable to provide self-care in the institution. Indeed, BOP medical records reflect that he had a successful laser surgery to repair the detached retina, that his eye looked great after surgery, and that BOP medical personnel carefully and successfully treated DiCrecchio's condition.[28] While the records indicate that he will eventually need cataract surgery at some point in the future, this condition does not interfere with Mr. DiCrecchio's ability to provide self-care in the institution. Without any documentation that Mr. DiCrecchio's conditions—which according to his medical records, are managed if not resolved—are untreated or inadequately managed, the Court cannot find that they constitute compelling and extraordinary circumstances warranting a sentence reduction. [29] Mr. DiCrecchio's completed retina surgery and future need for cataract surgery do not present a compelling reason to reduce his sentence.

Mr. DiCrecchio also indicates his preference for his "group of superior specialists."[30] To the extent that this is relevant to the continued maintenance of his eye conditions, it is addressed

---

[27] *Id.* The motion has not been updated since the transfer to FCI Lewisburg.

[28] Gov't Resp. Opp'n Mot. Sentence Reduction Ex. A at 9-10. [Doc. No. 48].

[29] *Compare United States v. Andrecola*, No. 22-397, 2025 WL 583043 (D.N.J. Feb. 24, 2025) (finding that blindness, among other conditions, without any documentation in the record suggesting that defendant is receiving inadequate treatment for his conditions, is not an extraordinary and compelling circumstance warranting release) *and United States v. Vangh*, No. 15-335, 2019 WL 6907983, at *4 (D. Minn. Dec. 19, 2019) (finding that blindness was insufficient to warrant compassionate release because defendant had not demonstrated how the condition had substantially diminished his ability to provide self-care within the correctional facility as his condition was treated with assistive devices) *with United States v. Derentz*, 608 F. Supp. 3d 189, 193 (E.D. Pa. 2022) (finding that BOP's documented delays in providing defendant with time-sensitive retina surgery were extraordinary and compelling reasons warranting compassionate release).

[30] Mem. Supp. Mot. Sentence Reduction at 11 [Doc. No. 43].

above. Any further objections to the quality of his care must first go through the BOP's administrative remedy process.[31] Mr. DiCrecchio's preference for the care team at FCI Fort Dix is not an extraordinary and compelling reason to reduce his sentence.

### C. The section 3353(a) sentencing factors and applicable policy statements weigh against Mr. DiCrecchio's release.

Even if Mr. DiCrecchio had presented extraordinary and compelling reasons, the compassionate release analysis would not end there. District courts must also consider whether a defendant poses a danger to the community[32] and whether the factors set forth in § 3553(a), to the extent that they are applicable, favor a sentence reduction.[33] Mr. DiCrecchio argues that a sentence reduction of 19 months and thus a total sentence of 102 months still satisfies the requirements of § 3553(a). His argument relies on the new Guidelines range, again applying the new Guidelines range and explaining that a 19-month reduction keeps Mr. DiCrecchio's sentence at the top of the guideline range. As the Court explained above, Mr. DiCrecchio cannot "backdoor" his way into receiving the benefits of Amendment 821 when it explicitly does not apply to his sentence. Moreover, Mr. DiCrecchio does not otherwise explain—as required by the Sentencing Commission's policy statements—how a 19-month reduction takes into account the nature and circumstances of the offense charged, Mr. DiCrecchio's history and characteristics, or the nature and seriousness of the danger to any person or community that his release would

---

[31] *See Meza-Meijia v. Warden FCI Fort Dix*, No. 25-243, 2025 WL 1451172, at * 2 (D.N.J. May 20, 2025) (explaining the BOP's administrative remedy procedures).

[32] The Sentencing Commission's policy statement, by referring to § 3142(g), instructs the Court to "weigh [the defendant's] danger to the community includ[ing] 'the nature and circumstances of the offense charged,' 'the history and characteristics of the person,' including 'the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history,' and 'the nature and seriousness of the danger to any person or the community that would be posed by the person's release.'" *United States v. Rodriguez*, 451 F. Supp. 3d 392, 406 (E.D. Pa. 2020) (quoting 18 U.S.C. § 3142(g)).

[33] *United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).

pose.[34]

The Section 3553(a) factors "include 'the nature and circumstances of the offense and the history and characteristics of the defendant,' as well as 'the need for the sentence imposed to serve the four overarching aims of sentencing: just punishment, deterrence, protection of the public, and rehabilitation.'"[35] Mr. DiCrecchio's crimes were undeniably serious—he was the ringleader of a decade-long criminal scheme to defraud his employee and multiple small business owners, causing $7 million in losses. He convinced others to join him in his scheme. His conduct only ended seven years ago, when he was 58. Mr. DiCrecchio fails to articulate how a sentence reduction is justified here. His 121-month sentence was at the upper end of the guideline range to reflect the seriousness of his crime, promote respect for the law, serve as just punishment, and demonstrate appropriate general and specific deterrence for future crimes. Accordingly, the Court will not conclude that his sentence is "not greater than necessary" at this time.

### IV.  CONCLUSION

For the reasons stated above, Mr. DiCrecchio's Motion for Reduction of Sentence will be denied without prejudice. An order will be entered.

---

[34] 18 U.S.C. § 3142(g).

[35] *Dean v. United States*, 581 U.S. 62, 67 (2017).